Argued and submitted January 14, reversed and remanded July 24, 1991

## James and Mary GIBSON,
*Respondents,*

*v.*

## Saki TZANTARMAS,
*Appellant - Third-Party Plaintiff,*
*and*

## Craig M. MORRIS,
dba Your Quality Tree Service
and Donald Bain,
*Third-Party Defendants.*

(CCV88-12-132; CA A62399)

815 P2d 221

Victor Calzaretta, Portland, argued the cause and filed the briefs for appellant.

James H. Marvin, Portland, argued the cause for respondents. On the brief were Glen S. Shearer and Schouboe, Marvin & Furniss, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Defendant appeals a judgment of $32,752.75 awarded to plaintiffs for damages resulting from the cutting of several fir trees on plaintiffs' property. He argues that the trial court's admission of evidence concerning other disputes and litigation in which he was involved denied him a fair trial. We reverse.

Plaintiffs owned undeveloped property adjacent to defendant's. In the spring of 1988, defendant decided to build a swimming pool and dog kennel on his property and contracted to have the work done.[1] During construction, two or more trees on plaintiffs' property were cut down, and gravel, concrete and soil were left on their property. When plaintiffs discovered what had occurred, they contacted defendant and asked him to remedy the situation. Defendant refused to do anything. Plaintiffs brought this action, seeking damages for common law trespass and statutory timber trespass. ORS 105.810. They also sought, based on a nuisance theory, an injunction to prohibit defendant from continuing to kennel two dogs on his property. The request for an injunction was dismissed during trial. The jury returned a verdict for plaintiffs, awarding $3,950 for the loss of the two trees. That amount was tripled pursuant to ORS 105.810. The jury also awarded $5,000 general damages for the intentional trespass and $15,000 punitive damages.

Defendant argues that the trial court's admission of evidence concerning other litigation in which defendant had been involved, as well as evidence of similar problems with another adjacent landowner, Georgeff, was improper and seriously prejudiced his defense. He asserts:

> "The court erred in allowing evidence of other alleged bad acts of the defendant, as well as evidence of other totally unrelated and unadjudicated lawsuits and labor disputes involving the defendant, causing a confusion of issues, misleading the jury and subjecting the defendant to the danger of unfair prejudice and thus depriving the defendant of a fair trial."

---

[1] Defendant has brought a third party action against the contractor; that claim is not at issue in this appeal.

Defendant contends that the trial court's errors began when it allowed several references by plaintiffs' counsel, during opening statement, to the other lawsuits that defendant was involved in and to the dispute with Georgeff. Later, plaintiffs were allowed, over objection, to submit evidence relating to the other lawsuits. In addition, Georgeff testified extensively about alleged damages to his land. Defendant contends that all of the evidence was irrelevant and that its admission violated OEC 404(3), which provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Georgeff described what happened to his property. He testified that the elevation of his land had been altered as a result of defendant's depositing soil on it. He also said that, although he had denied defendant permission to cross his land with heavy equipment to be used in the construction of his swimming pool, he later discovered that equipment had been driven across his land and that gravel and fill dirt was being stockpiled on it. He tried several times to reach defendant by telephone, but defendant did not return his calls. When Georgeff finally did reach defendant, he told him about those problems and also complained to him that a curb along the road adjacent to his property had been damaged. Defendant told him "we will fix it." Georgeff also asked defendant not to disturb any trees on his land. He later found, however, that several trees on his land had been cut down. Georgeff testified that those problems had never been adequately remedied and that he had sued defendant.

■ The trial court's admission of Georgoff's testimony was not error. Because it involved actions by defendant very similar to those alleged to have occurred in this case and, during the same time, it was relevant to show defendant's knowledge that the work being done on his property was damaging adjoining parcels. Further, it is probative of defendant's intent, because it tends to establish a pattern on defendant's part of disregarding the rights of his neighbors. It

also demonstrates that defendant's intrusion on his neighbors' rights may have been intentional or, at least, not accidental. The trial court instructed the jury that the evidence was only relevant to establish defendant's motive, opportunity, intent, preparation, plan or absence of mistake or accident and that it should not be considered as proof of defendant's bad character.[2] Accordingly, we hold that the admission of Georgeff's testimony, and the reference to it during plaintiffs' opening statement, was proper.

■ Next, defendant argues that the court erred by admitting evidence of other lawsuits in which he was involved. In his opening statement, plaintiffs' counsel said that "[t]he evidence will show that Mr. Tzantarmas * * * has been in the courtroom repeatedly." During trial, the court allowed the following to be read from defendant's discovery deposition:[3]

"Q.   What lawsuits have you been involved in other than these two?

"A.   We involved in the union, union.

"Q.   What other lawsuits—you had your divorce?

"A.   Divorce lawsuit.

"Q.   Line twelve, any other lawsuits?

"* * * * *

---

[2] The court gave this instruction:

"Ladies and gentlemen of the jury, the evidence relating to damages to Mr. Georgeff's property isn't relevant to this case. What is relevant is any evidence which would help you make a decision as to whether any acts alleged in this case to have been committed by Mr. Tzantarmas was—he had a motive, opportunity, intent, preparation, plan or absence of mistake or accident. That's the only reason it's relevant."

[3] Contrary to plaintiffs' assertion, defendant's objection was timely and specific, according to the relevant portion of the transcript, in which plaintiffs' counsel was reading from a deposition of defendant:

"Q.   Page sixteen, Line two. Have you been involved in any lawsuit?

"Defense Counsel:  Your Honor, I object to these questions. They aren't relevant to anything, to any issues before the court and jury.

"The Court:  Counsel approach the bench, please, so I can see a copy of it, of the deposition?"

No ruling on the motion appears on the record and, after the request for counsel to approach the bench, further references were made to a union dispute and defendant's marriage dissolution proceedings.

"Mr. Lekas []:   [T]hat is a foreclosure, I suppose that would be considered a lawsuit. If I might, I represented Mr. Tzantarmas for a long time. Let me tell you the lawsuits that I recall that Mr. Tzantarmas has been involved in. His divorce matter. * * * [T]here was a dispute over wages with the band that was here one time that resulted in some litigation. * * * There was another matter involving an air conditioning system and the warranty of the system, how it was put in. Then there was his domestic matter involving his previous marriage.

"* * * * *

"Q.   Line ten. Let me explore a little bit further about these. You mentioned the union. Is that a lawsuit that you have going with the union?

"Mr. Lekas:   * * * I forgot that. That was a long time ago when he first got the Copper Penny. It was a unionization and there was a series of administrative hearings that resulted in a circuit court hearing.

"* * * * *

"Mr. Thomas:   You might also add in there there is a pending lawsuit with Coast Vending with the witness.

"Q.   Tell me about the Coast Vending lawsuit, what is that about?

"A.   What do you want to know?

"Q.   I don't know how to ask the question because we all know there is a big realm of lawsuits that are available out there. Does this deal with some vending machines on your property?

"A.   I have some vending machines on the property, yes.

"Q.   What is the nature of this dispute that you have with Coast Vending?

"* * * * *

"Mr. Thomas:   [I]t involves the interpretation of a lease agreement."

Plaintiffs argue that the evidence was relevant

"upon the punitive damages issue for the jury's determination as to the nature of defendant's conduct, defendant's motive and/or whether a sum of money would be required to discourage the defendant's conduct in the future."

We conclude, however, that the other lawsuits had no relevance to this case and could only serve to suggest that defendant is litigious or a person of bad character. Those are not proper grounds upon which the jury could base its conclusions. OEC 404(3). The trial court erred by admitting the evidence of the other lawsuits.

■■    Having concluded that evidential error exists, we must determine whether reversal is required. Evidential error is not presumed to be prejudicial. OEC 103(1). We conclude, however, that defendant's right to have the jury determine liability and damages only by relevant facts was prejudiced. The jury awarded him $15,000 punitive damages, in addition to compensatory and general damages. We cannot say that the jury did not base its assessment of liability and damages, at least in part, on evidence of defendant's involvement in litigation. Given our disposition of the case, we do not address defendant's second assignment of error.

Reversed and remanded.